UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KJELDEN CUNDIFF,

        Plaintiff,

v.

DOLLAR LOAN CENTER LLC, et al.,

        Defendants.

2:09-CV-02441-PMP-PAL

ORDER

Presently before the Court is Defendants' Motion to Dismiss Amended Complaint (Doc. #27), filed on March 29, 2010. Plaintiff filed an Opposition (Doc. #35) on April 22, 2010. Defendants filed a Reply (Doc. #46) on May 10, 2010.

Also before the Court is Defendants' Motion for Summary Judgment as to All Claims Against Defendant the Charles C. Brennan Living Trust (Doc. #28), filed on March 29, 2010. Plaintiff filed an Opposition (Doc. #32) and a Motion for Denial or Continuance Pursuant to FRCP Rule 56(f) (Doc. #34) on April 17, 2010. Defendants filed a Reply (Doc. #44) on May 6, 2010.

**I. BACKGROUND**

According to Plaintiff Kjelden Cundiff ("Cundiff"), Defendant Charles C. Brennan ("Brennan") was his childhood friend and former schoolmate. Plaintiff alleges that Brennan solicited him to leave his corporate position with Pillsbury Company in Minnesota to go to work for Brennan in Las Vegas. At that time, Brennan was operating a sole proprietorship business doing business as Dollar Loan Center, and was preparing to commence a collection agency doing business as Clark County Collection Service.

Brennan advised Plaintiff that he was going to incorporate a business called Brencor which was going to own and operate Dollar Loan Center and Clark County Collection Service. Cundiff contends he did not want to leave his Pillsbury job prior to May 2001 because he would vest in that company's pension plan if he stayed until then. However, Brennan was insistent that Cundiff start work for him in March 2001, and assured Cundiff that a position with Brencor would surpass the Pillsbury pension.

Cundiff alleges that on March 1, 2001, he accepted the employment offer and began to work for Brennan performing management work. Cundiff contends that Brennan never formed Brencor as promised, and instead transferred ownership of Dollar Loan Center and Clark County Collection Service to a living trust, Defendant Charles C. Brennan Living Trust ("Trust"). The Trust then formed Defendants Dollar Loan Center, LLC ("DLC") and Clark County Collection Service, LLC ("CCCS") in April 2002.

Cundiff alleges Defendants were supposed to compensate him with a $4000 signing bonus, health and dental insurance, a car allowance, and six months housing allowance until he found a house in Las Vegas. Additionally, he was to receive an annual salary increasing each year from his first through fifth years of employment from $60,000 to $100,000, and then continuing at $100,000 for the fifth through fifteenth years of employment, and a one percent ownership interest in the business starting March 1, 2007 to be capped at a ten percent ownership interest after fifteen years.

Cundiff alleges he left Minnesota and came to Nevada to work for Defendants, starting in March 2001 until October 21, 2009. However, Cundiff contends Defendants did not live up to the bargain, by failing to pay for his full monthly salary as set forth in the agreement, by failing to pay for his health insurance, by refusing to pay his salary due and owing for November 2009 through March 2016, and failing to transfer one percent interest in the company on March 1, 2007, 2008, and 2009. Cundiff contends that when he brought these breaches to Defendants' attention on October 21, 2009, Defendants fired him within

1 the hour.  Plaintiff alleges Defendants thus breached the contract by firing him and also by
2 anticipatorily breaching the ownership interest transfers for the remaining years of the
3 contract.
4     Cundiff therefore asserts claims for (1) breach of contract, (2) breach of the
5 implied covenant of good faith and fair dealing, (3) declaratory relief that he had a valid and
6 binding employment contract and/or that Defendants violated Nevada law by making false
7 representations to induce him to leave his job in Minnesota and move to Nevada, (4)
8 negligent misrepresentation, (5) unjust enrichment, (6) luring employee under false
9 pretenses under Nevada Revised Statutes § 613.010, (7) promise with an intent not to
10 perform, (8) promissory estoppel, and (9) constructive trust.  Defendants now move to
11 dismiss.  Defendants also move for summary judgment, arguing the Trust is not a proper
12 party to this litigation.  Plaintiff opposes both motions and moves for a denial or
13 continuance pursuant to Federal Rule of Civil Procedure 56(f).
14 **II.  MOTION TO DISMISS (Doc. #27)**
15     In considering a motion to dismiss, "all well-pleaded allegations of material fact
16 are taken as true and construed in a light most favorable to the non-moving party."  Wyler
17 Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation
18 omitted).  However, the Court does not necessarily assume the truth of legal conclusions
19 merely because they are cast in the form of factual allegations in the plaintiff's complaint.
20 See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).  There is a
21 strong presumption against dismissing an action for failure to state a claim.  Ileto v. Glock
22 Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).  A plaintiff must make sufficient factual
23 allegations to establish a plausible entitlement to relief.  Bell Atl. Corp. v Twombly, 550
24 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions,
25 [or] a formulaic recitation of the elements of a cause of action."  Id. at 555.
26 ///

**A.  Count one - breach of contract**

In Nevada, an employment contract presumptively is terminable at will.  Martin v. Sears, Roebuck & Co., 899 P.2d 551, 554 (Nev. 1995); D'Angelo v. Gardner, 819 P.2d 206, 211 (Nev. 1991).  An agreement for employment for an indefinite term usually will be found to be an at-will relationship.  Bally's Grand Employees' Fed. Credit Union v. Wallen, 779 P.2d 956, 958 (Nev. 1989).  "Generally, an at-will employment contract can be terminated whenever and for whatever cause by an employer without liability for wrongful discharge if the employment is not for a definite term and if there is no contractual or statutory restrictions on the right of discharge."  Smith v. Cladianos, 752 P.2d 233, 234 (Nev. 1988).

Although employment generally is at-will, "an employer may expressly or impliedly agree with an employee that employment is to be for an indefinite term and may be terminated only for cause or only in accordance with established policies or procedures." D'Angelo, 819 P.2d at 211; see also Martin, 899 P.2d at 554.  This is known as a "contract of continued employment." D'Angelo, 819 P.2d at 211 (quotation marks omitted). Additionally, an employer may bind itself to a term of lifetime employment if the parties expressly so agree, and consideration is given therefor.  Shoen v. Amerco, Inc., 896 P.2d 469, 473-74 (Nev. 1995) (holding plaintiff could enforce lifetime employment agreement where lifetime term was express and fifty-nine-year-old employee gave consideration in agreeing to not to provide his services to any competitor for the remainder of his life, and circumstances indicated the contract was the plaintiff's retirement deal).

Here, the document which Plaintiff sets forth as the contract provides as follows:

> [Y]our starting salary will be $5,000 per month ($60,000 per year) and will carry a guaranteed progression of the following:
> 1st year     $60,000 annual salary
> 2nd year    $70,000 annual salary
> 3rd year    $80,000 annual salary
> 4th year    $90,000 annual salary
> 5th year    $100,000 annual salary

4

> After the 5th year of service, your salary will cap at $100,000 per year and you will begin to receive a percentage of the company to tie you into no-charge ownership of BRENCOR.  Each year for the next 10 years, on you[r] anniversary date . . . after 6 years of employment, you will receive 1% interest of the company as a bonus.  After a 15 year period with the company, you will be receiving $100,000 per year and own 10% of the company.

(Am. Compl., Ex. 1.)  The contract's plain language establishes that it is for an indefinite period.  Although Plaintiff tries to characterize it as a fifteen-year contract, the final sentence of the above-quoted provision plainly states that after fifteen years, Plaintiff would continue to receive a $100,000 per year salary.  The contract is for an indefinite term, and thus presumptively is at-will.  As such, Defendants could terminate the contract for any reason without liability so long as there are no contractual or statutory restrictions on Defendants' right of discharge.  Plaintiff has not pled any facts supporting a contractual or statutory restriction on Defendants' right of discharge.  The Court therefore will grant Defendants' motion to dismiss the breach of contract claim.

### B. Count two - breach of covenant of good faith and fair dealing

Because the employment relationship was at will, and thus Defendants could discharge Plaintiff for any reason absent contractual or statutory restrictions, Plaintiff cannot state a claim for breach of the covenant of good faith and fair dealing.  Martin, 899 P.2d at 555.  The Court therefore will grant Defendants' motion to dismiss this claim.

### C. Count three - negligent misrepresentation

Nevada has not addressed whether a misrepresentation as to future performance can be negligent.  "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."  Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted).  "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions."  Id. (quotation omitted).

The Court concludes Nevada would hold that a misrepresentation as to future

5

performance cannot be negligent because such a statement is either fraudulent, i.e., the person never held that intention at the time he made the statement, or it was not a misrepresentation at all, the person simply later failed to perform as promised. As stated by the Restatement (Second) of Torts § 530:

> To be actionable the statement of the maker's own intention must be fraudulent, which is to say that he must in fact not have the intention stated. If he does not have it, he must of course be taken to know that he does not have it. If the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action of deceit if the maker for any reason changes his mind and fails or refuses to carry his expressed intention into effect.

California specifically rejected an attempt to base a negligent misrepresentation claim on an allegedly negligent false promise of future performance:

> Simply put, making a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform and, therefore, does not constitute a false promise. Moreover, we decline to establish a new type of actionable deceit: the negligent false promise.

Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 159 (Cal. App. Ct. 1991). The Court concludes Nevada likewise would not recognize such a claim.

Here, Plaintiff alleges Brennan misrepresented his intent to perform in the future. Brennan either intended to perform at the time he entered the contract or he did not. If he did not intend to perform at the time he made the promise, that is an intentional misrepresentation, not a negligent misrepresentation. If he intended to perform at the time he entered the contract, then he made no misrepresentation as to his intentions. The Court therefore will grant Defendants' motion to dismiss this claim.

**D.  Count four - unjust enrichment**

Defendants contend Plaintiff cannot allege an unjust enrichment claim when he has alleged the existence of a written contract. Plaintiff responds that he pleads this claim in the alternative. The Court will grant Plaintiff thirty (30) days to amend to reassert this claim without including or incorporating by reference any allegation that the parties entered

into an enforceable contract.

### E.  Count five - Nev. Rev. Stat. § 613.010

Defendants move to dismiss this claim, alleging it only applies when a person induces another to move from one place or another within the state of Nevada, or induces the person to move into the state to work in a department of labor of the state, as in a governmental body.  Defendants argue they did not induce Plaintiff to move within the state, and they did not induce Plaintiff to work in a department of labor in the state.  Defendants also argue the statute does not apply to highly compensated executives, as it applies to "workmen."  Additionally, Defendants contend Plaintiff must allege they induced him to come here using false representations or under false pretenses, and Plaintiff has not pled fraud with particularity.  Finally, Defendants argue DLC and CCCS cannot be liable because they did not even exist at the time of any alleged false statements.

Plaintiff responds that the relevant statutory section applies to him because it refers to "workmen of any class or calling," which would include any employee.  Plaintiff also contends it does not apply just to state departments of labor, as the statute makes liable any person, company, corporation, or organization.

Nevada Revised Statutes § 613.010 provides as follows:

> 1. It shall be unlawful for any person, persons, company, corporation, society, association or organization of any kind doing business in this state by himself, herself, itself, themselves, his, her, its or their agents or attorneys to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state to work in any of the departments of labor in this state, through means of false or deceptive representations, false advertising or false pretenses concerning:
> (a) The kind and character of the work to be done;
> (b) The amount and character of the compensation to be paid for such work;
> (c) The sanitary or other conditions of their employment; or
> (d) The existence or nonexistence of a strike or other trouble pending between the employer and employees at the time of or prior to such engagement, proposal or contract for such employment of workers.
> 2. Any person, persons, company, corporation, society,

> association or organization of any kind doing business in this state, as well as his, her, their or its agents, attorneys, servants or associates, violating any of the provisions of subsection 1 is guilty of a gross misdemeanor.
> 3. Any worker of this state or any worker of another state who has been or shall be influenced, induced or persuaded to engage with any person mentioned in subsection 1, or any company, corporation, society or organization mentioned in subsection 1, through or by means of any of the things therein prohibited, shall have a cause of action for recovery and may recover at law for all damages that the worker shall have sustained in consequence of the false or deceptive representations, false advertising or false pretenses used to induce the worker to change his or her place of employment, or place of abode in case such worker shall not be then employed at the time of such inducement and hiring, against any person or persons, corporations, companies or associations directly or indirectly causing such damages. In any action under this section for the recovery of such damages, the court shall have the power to award a reasonable attorney's fee in favor of the prevailing party, which fee shall be taxed as costs against the losing party therein.

Nev. Rev. Stat. § 613.010. Nevada never has addressed this statute's meaning. The Court therefore must predict how Nevada's highest court would resolve the issue. Giles, 494 F.3d at 872.

Under Nevada law, statutory construction is a question of law for the Court. Richardson Constr., Inc. v. Clark County Sch. Dist., 156 P.3d 21, 23 (Nev. 2007). The Court should construe the statute to give effect to the Legislature's intent. Id. The Court begins with the statute's plain statutory language, giving effect to any unambiguous language. Id. If the statutory language is ambiguous, the Court must "examine the statute in the context of the entire statutory scheme, reason, and public policy to effect a construction that reflects the Legislature's intent." Id.

By its plain language, the statute is not restricted to employment with a governmental department of labor, as Defendants argue. First, liability will attach to any person, persons, company, corporation, society, association or organization of any kind doing business in this state. Thus, it appears to extend to private employment, and is not focused on inducing employment with the State as a governmental employer. Moreover, subsection three provides that a worker "who has been or shall be influenced, induced or

8

persuaded to engage with any person mentioned in subsection 1, or any company, corporation, society or organization mentioned in subsection 1," has a cause of action. Id. § 613.010. Thus, the statute contemplates the worker will "engage with" private organizations, and if that engagement is obtained through the prohibited means, the worker will have a cause of action.

As to Defendants' second argument, there is no basis to exempt managerial employees from this statute's reach. The statute covers "workers of any class or calling." The statute does not contain an exemption for highly paid executives or management. Moreover, as discussed below, Plaintiff adequately pleads falsity with particularity as to Brennan. The Court therefore will deny Defendants' motion to dismiss this claim as to Defendant Brennan. However, as to DLC, CCCS, and the Trust, Plaintiff has not alleged with particularity how these Defendants would be liable under the statute when they did not even exist at the time of the alleged misrepresentations that induced Plaintiff to come to Nevada. The Court therefore will dismiss this claim as to these Defendants, without prejudice to Plaintiff amending his Complaint within thirty (30) days to plead such facts with particularity if there is a sufficient basis for doing so.

**F.  Count six - declaratory judgment**

Plaintiff's declaratory claims are duplicative of his substantive claims, and add nothing to this litigation. The Court, in its discretion, therefore will dismiss the request for declaratory relief. See Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (stating that avoidance of duplicative litigation is one reason for a district court to decline exercising jurisdiction over a claim for declaratory relief); Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749 (7th Cir. 1987) (affirming denial of declaratory relief where it would "serve no useful purpose").

**G.  Count seven - intent not to perform**

In Nevada, the failure to fulfill a promise to perform in the future may give rise to

a fraud claim if the promisor "had no intention to perform at the time the promise was made." Bulbman, Inc. v. Nev. Bell, 825 P.2d 588, 592 (Nev. 1992). To state a fraud claim, the plaintiff must allege:

> 1. A false representation made by the defendant;
> 2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);
> 3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;
> 4. Plaintiff's justifiable reliance upon the misrepresentation; and
> 5. Damage to the plaintiff resulting from such reliance.

Id.

Plaintiff must plead his fraud claim with particularity. Fed. R. Civ. P. 9(b). Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy this burden, the complaint "'must set forth more than the neutral facts necessary to identify the transaction.'" Yourish v. Cal. Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (footnote omitted) (quoting In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)). The "neutral facts" mean the "'time, place, and content of an alleged misrepresentation.'" Id. at 993 n.10 (quoting GlenFed, 42 F.3d at 1547-48). In addition to pleading these neutral facts, the plaintiff "'must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.'" Id. (quoting GlenFed, 42 F.3d at 1548).

Plaintiff alleges that he met with Brennan in fall 2000 in Minneapolis, and that in November 2000, Brennan faxed to Plaintiff the employment offer. (Am. Compl. at 13.) Plaintiff alleges he then flew to Las Vegas shortly after Thanksgiving and during this trip Brennan recruited Plaintiff to accept employment with him. (Id.) Plaintiff further alleges he came to Las Vegas again around New Year's Eve 2000, during which trip Brennan again solicited him. (Id. at 13-14.) Plaintiff alleges Brennan advised him Brennan was going to

form Brencor and Plaintiff would be vice president, and eventually Plaintiff would obtain an ownership interest in the businesses. (Id. at 14.) According to Plaintiff, he relied on these representations, specifically the representation of future ownership, and quit his prior employment and moved to Nevada to accept the position. (Id. at 14-15.) Plaintiff alleges that "[a]t the time that Defendant Brennan made the representation that Plaintiff would earn and be given an ownership interest in the businesses, he had no intention of performing on this promise." (Id. at 15.) Plaintiff alleges he was damaged as a result of his reliance on Brennan's misrepresentation. (Id. at 16.)

Plaintiff thus has alleged the who (Brennan), the what (misrepresentations about employment terms including ownership interest), when (late 2000, early 2001), and where (oral communications during various trips and in employment offer). As to why it was false, Plaintiff alleges Brennan had no intention of performing at the time he made the representations. By Plaintiff's own allegations, Brennan performed under the contract's terms for four years. Although that undermines an argument that at the time Brennan made the statements they were false, viewing the allegations in the light most favorable to Plaintiff, Plaintiff plausibly has alleged that Brennan did not intend to fulfill his promises when he made them. It is plausible that Brennan intended to induce Plaintiff to work for him for several years before the ownership interest clause was triggered, but never intended to live up to the promise of granting Plaintiff ownership interests. The Court therefore will deny Defendants' motion to dismiss this claim as to Brennan.

However, Plaintiff has not alleged with particularity how or why Defendants DLC, CCCS, or the Trust are liable for this claim. None of these entities existed at the time the alleged misrepresentations were made. The Court therefore will dismiss this claim as to these Defendants, without prejudice to Plaintiff amending his Complaint within thirty (30) days to plead such facts with particularity if there is a sufficient basis for doing so.

///

**H.  Count eight - promissory estoppel**

Defendants move to dismiss this claim, arguing Plaintiff cannot plead a promissory estoppel claim because he already has alleged a breach of contract claim.  As the Court is dismissing the breach of contract claim, the Court will grant Plaintiff thirty (30) days in which to amend to reassert the promissory estoppel claim without including or incorporating allegations of a valid, enforceable contract between the parties.

**I.  Count nine - constructive trust**

In Nevada, a constructive trust is "a remedial device by which the holder of legal title to property is held to be a trustee of that property for the benefit of another who in good conscience is entitled to it."  Locken v. Locken, 650 P.2d 803, 804-05 (Nev. 1982).  A constructive trust may be appropriate where: "(1) a confidential relationship exists between the parties; (2) retention of legal title by the holder thereof against another would be inequitable; and (3) the existence of such a trust is essential to the effectuation of justice."  Id. at 805.

A constructive trust is a remedy, not a cause of action.  Consequently the Court will not "dismiss" it, as it is not an independent claim.

**III.  MOTION FOR SUMMARY JUDGMENT (Doc. #28)/RULE 56(f) MOTION (Doc. #34)**

Defendant Trust moves for summary judgment, arguing that because it was not formed until February 11, 2002, it could not have committed any of the actions Plaintiff alleges as the basis for his claims.  Trust therefore argues the Court should grant summary judgment in its favor on all claims.  Plaintiff responds by arguing that the Trust is an indispensable party under Federal Rule of Civil Procedure 19 either because it holds legal title to Plaintiff's alleged equitable interest in the businesses.  Plaintiff also moves under Federal Rule of Civil Procedure 56(f) for a denial of the Trust's motion to pursue discovery as to the ownership structure of the various businesses.  Plaintiff contends that discovery

will show that Brennan's interests in DLC and CCCS were transferred into or are owned by the Trust. In reply, the Trust argues that it is not an indispensable party because Brennan is the trustee, and the Court therefore could order him, as Trustee, to transfer any interest in the companies. The Trust also argues that Plaintiff presents no evidence raising an issue of fact that the Trust owns any interest in the companies, as Plaintiff's affidavit is based solely on hearsay.

In the interest of justice, the Court may grant additional time for discovery where the opposing party to a motion for summary judgment has presented by affidavit, compliant with Rule 56(f), that they cannot obtain facts essential to the opposition of the motion. Fed. R. Civ. P. 56(f). However, a party seeking further discovery under Rule 56(f) bears the burden to make clear "'what information is sought and how it would preclude summary judgment.'" Nicholas v. Wallenstein, 266 F.3d 1083, 1088-89 (9th Cir. 2001) (quoting Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998)). As the United States Court of Appeals for the Second Circuit has noted, "it is clear that a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover." Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 (2d Cir. 1981).

Pursuant to Federal Rule of Civil Procedure 19(a), a party must be joined as a "necessary" party in two circumstances: "(1) when complete relief is not possible without the absent party's presence, or (2) when the absent party claims a legally protected interest in the action." In re County of Orange, 262 F.3d 1014, 1022 (9th Cir. 2001) (quotation omitted). If the Court finds an absent party is "necessary" under either of these tests, the Court then determines whether joinder is feasible. E.E.O.C. v. Peabody W. Coal Co., 400 F.3d 774, 779 (9th Cir. 2005). If joinder of the necessary party is feasible, then the party will be joined and the action will proceed. Id.

Generally, a trust is not a necessary or indispensable party where the trustee is named as a party. See, e.g., Sunbelt Envmtl. Servs., Inc. v. Rieder's Jiffy Market, Inc., 138 S.W.3d 130, 134 (Mo. App. Ct. 2004) (trustees and beneficiaries are necessary parties); W. Life Trust v. State, 536 N.W.2d 709, 712 (N.D. 1995) (trustee is real party in interest); Colo. Springs Cablevision, Inc. v. Lively, 579 F. Supp. 252, 254 (D. Colo. 1984) (trustee was properly named defendant and trust therefore was not indispensable).

In the interest of justice, the Court will grant Plaintiff's Rule 56(f) motion. The question of whether the Trust owns Brennan's interests in DLC and CCCS should be a very straightforward matter and easily ascertainable at little to no discovery costs to the parties. Although a trust generally is not a necessary party where the plaintiff has sued the trustee, nothing prevents the Trust's trustee from changing at any time. Plaintiff seeks as a potential remedy the turnover of ten percent ownership in the businesses. To the extent Plaintiff prevails and shows this is the remedy to which he is entitled, such ownership interest would have to be taken from the current owner, and Plaintiff contends further discovery will show the Trust is the current owner. Consequently, the Trust may be a proper nominal defendant, not accused of wrongdoing itself, but with interests which may be affected by this litigation and without whose participation complete relief cannot be afforded. The Court therefore will grant Plaintiff's Rule 56(f) motion and will deny Defendant Trust's motion for summary judgment.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Amended Complaint (Doc. #27) is hereby granted in part and denied in part. The motion is granted as to counts one, two, three, and six as to all Defendants. The motion also is granted as to counts five and seven as to Defendants Dollar Loan Center, LLC, Clark County Collection Service, LLC, and the Charles C. Brennan Living Trust, without prejudice to amend to allege facts supporting liability as to these Defendants on these claims. The motion is

denied in all other respects.

     IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment as to All Claims Against Defendant the Charles C. Brennan Living Trust (Doc. #28) is hereby DENIED.

     IT IS FURTHER ORDERED that Plaintiff's Motion for Denial or Continuance Pursuant to FRCP Rule 56(f) (Doc. #34) is hereby GRANTED.

     IT IS FURTHER ORDERED that Plaintiff shall file an amended complaint within thirty (30) days of the date of this Order.

DATED: July 29, 2010

_____
PHILIP M. PRO
United States District Judge